UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                    Crim. Action No. 5:10–cr–88–cr–3

David Baez-Garcia

## REPORT AND RECOMMENDATION
(Doc. 648)

Petitioner David Baez-Garcia, proceeding *pro se*, moves under 28 U.S.C.

§ 2255 to vacate, set aside, or correct his sentence.  (Doc. 648.)  After five days of a

jury trial (*see* Docs. 565, 566, 573, 579, 581), Baez-Garcia pleaded guilty pursuant to

a written plea agreement to engaging in a conspiracy to distribute five kilograms or

more of cocaine, 100 grams or more of heroin, and oxycodone, in violation of 21

U.S.C. §§ 846 and 841.  (Doc. 580 at 1, ¶ 1; *see also* Doc. 116 at 1–2.)  In March

2016, Chief United States District Judge Christina Reiss sentenced Baez-Garcia to

a 204-month term of imprisonment, to be followed by a five-year term of supervised

release.  (Doc. 620 at 2–3; *see also* Doc. 651 at 126.)  Baez-Garcia did not pursue a

direct appeal.

In the instant Motion, Baez-Garcia claims that Attorneys David Williams and

Brooks McArthur provided ineffective assistance of counsel by advising him to plead

guilty and by failing to challenge the drug quantity calculation employed to

determine the advisory Sentencing Guideline range of imprisonment.  (*See generally*

Docs. 648; 648-1.)  Baez-Garcia also complains of his attorneys' failure to challenge the indictment because of misconduct by a Massachusetts state chemist who did not participate in the investigation.  The government opposes the Motion.  (Doc. 658.) For the reasons set forth below, I recommend that Baez-Garcia's Motion be DENIED.

## Background

The following facts are derived from the records of this court, including the trial transcripts from the five days of jury trial (Docs. 597–601), the transcripts of the sentencing and change of plea proceedings (Docs. 650, 651), the Plea Agreement (Doc. 580), the presentence report (PSR), and the affidavits of counsel for Baez-Garcia filed in connection with Baez-Garcia's Motion (Docs. 656, 657).

## I.    Investigation and Pretrial Proceedings

In 2009, the Drug Enforcement Administration (DEA) and the Southern Vermont Drug Task Force investigated a large-scale heroin and cocaine distribution ring operating throughout Vermont.  (PSR at 6, ¶ 12.)  Investigators ultimately determined that Baez-Garcia was an organizer or leader of the conspiracy, which spanned almost two years, with the participation and assistance of numerous other parties.  (*Id.*)  "The conspiracy involved cocaine, heroin, and oxycodone . . . and Baez-Garcia operated the conspiracy from various apartments in Rutland, Quechee, and Killington."  (*Id.* at 7, ¶ 14.)  Law enforcement conducted 15 controlled purchases of narcotics from members of the conspiracy during the course of the investigation.  (*Id.* at 11-12, ¶ 28.)

On July 12, 2011, the federal grand jury returned a 12-count Third Superseding Indictment, charging Baez-Garcia and six codefendants with various offenses related to the conspiracy. (Doc. 116.) Count One charged Baez-Garcia and his codefendants with knowingly and willfully conspiring to distribute five or more kilograms of cocaine, 100 grams or more of heroin, and oxycodone, in violation of 21 U.S.C. §§ 846, 841(a), (b)(1)(A), and (b)(1)(B). (*Id.* at 1–2.) Count Two charged Baez-Garcia with knowingly and intentionally distributing heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (*Id.* at 3.)

Baez-Garcia left Vermont in December 2009 for his native country of the Dominican Republic. (Doc. 651 at 131; Doc. 611 at 9.) He was ultimately arrested in the Dominican Republican where he was subject to extradition proceedings. (Doc. 651 at 131.) It is beyond dispute that Baez-Garcia agreed to extradition to the United States and that the extradition agreement between the United States and the Dominican Republic capped Baez-Garcia's sentencing exposure at 30 years' imprisonment in the event of a conviction. (Doc. 650 at 8–9.) In November 2014, the court appointed Attorney David Williams, an experienced member of the court's Criminal Justice Act Panel, to represent Baez-Garcia. The court later appointed Attorney Brooks McArthur, also a member of the CJA Panel, as co-counsel for Baez-Garcia.

## II.    Jury Trial and Plea Agreement

A jury trial commenced on September 9 and continued through September 16, 2015. (*See* Docs. 597–601.) Only Baez-Garcia proceeded to trial, as his

codefendants pleaded guilty. (*See* Doc. 651 at 126; *see also United States v. Reyes-Nieto et al.*, No. 5:10-cr-88-cr, ECF Nos. 133, 141, 145, 177, 181, 190 (D. Vt. 2010.)) The government presented extensive evidence against Baez-Garcia, including trial testimony by DEA special agents, a U.S. Customs and Border Protection officer, Massachusetts and Vermont State Police officers, and Nancy Brooks, a forensic chemist with the Massachusetts State Police Crime Laboratory, who tested and identified narcotics involved in the conspiracy. (PSR at 14–25, 27, ¶ 84; *see also* Docs. 597–601.) The evidence against Baez-Garcia also included "trial testimony by multiple co[]conspirators and witnesses." (PSR at 27, ¶ 84.) The evidence against Baez-Garcia included the testimony of coconspirator Rauddys Baria Tejeda, who testified that he typically supplied Baez-Garcia with 300 to 500 grams of cocaine, 100 grams of heroin, and 400 oxycodone pills on a weekly basis. (*Id.* at 24, ¶ 78(b); *see also* Doc. 600 at 187–88.) Baez-Garcia's former girlfriend Jessica Lever, who shared a condominium with him for a period during the conspiracy, testified that after Baez-Garcia's meetings with narcotics suppliers, described as "the Mexicans" she had observed between three and five kilograms of heroin in their shared home. (Doc. 598 at 147–48.) Other evidence against Baez-Garcia included the testimony of Thomas Morrissey who described being paid in cocaine for supplying personal services to Baez-Garcia. Morrissey also authenticated recorded phone calls in which Baez-Garcia discussed the activities of the conspiracy. (*See* Doc. 599 at 104–09, PSR at 24, ¶¶ 76–77, 27, ¶ 84.)

After the fifth day of trial, Baez-Garcia entered into a Plea Agreement with the government (Doc. 580). In the written Agreement, Baez-Garcia agreed to plead guilty to Count One of the Third Superseding Indictment, charging him with conspiracy to distribute 5 kilograms or more of cocaine, 100 grams or more of heroin, and oxycodone, in violation of 21 U.S.C. §§ 846 and 841. (Doc. 580 at 1, ¶ 1.) In the Agreement, Baez-Garcia attested to his understanding that his guilty plea would result in a ten-year mandatory minimum term of imprisonment, with statutory exposure of up to a life sentence, as well as a mandatory minimum five-year term of supervised release and up to a lifetime term of supervised release, under 21 U.S.C. § 841(b). (*Id.* ¶ 2.) Baez-Garcia stipulated that "the appropriate base offense level for [the] drug quantity under the United States Sentencing Guidelines [(USSG)] [wa]s level 34." (*Id.* at 2, ¶ 4.) The parties further agreed that under Fed. R. Crim. P. 11(c)(1)(C), "the appropriate term of imprisonment the Court should impose [wa]s no less than fifteen years (180 months) and no more than eighteen years (216 months)." (*Id.* at 6, ¶ 16; *see also* Fed. R. Crim. P. 11(c)(1)(C) ("If the defendant pleads guilty . . . to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case.").) Baez-Garcia also attested to his satisfaction with his attorneys' representation. (Doc. 580 at 6–7, ¶ 19.)

The parties appeared before Chief Judge Reiss for a change of plea hearing on September 17, 2015. (Doc. 650.) Judge Reiss reviewed the Plea Agreement with

Baez-Garcia in detail and engaged in the full colloquy required by Fed. R. Crim. P. 11. (*Id.* at 5–26.) Baez-Garcia confirmed that he had "read and discuss[ed] each and every paragraph of the plea agreement with [his] attorney before signing it," and again affirmed his satisfaction with the representation provided by his attorneys. (*Id.* at 10, 11.) At the change of plea hearing, Attorney Williams noted that, under the terms of the extradition agreement between the Dominican Republic and the United States, Baez-Garcia faced a maximum sentence of "no more than 30 years." (Doc. 650 at 8–9.) Such limitations in extradition agreements control because, "[b]ased on international comity, the principle of speciality generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country." *United States v. Baez*, 349 F.3d 90, 92 (2d Cir. 2003) (per curiam). Thus, the sentencing court was required to defer to the substantive assurances made by the United States to the Dominican Republic with regard to the sentencing exposure, even if Baez-Garcia had been convicted at trial. *Id.* at 93.

## III. Sentencing

Prior to sentencing, the United States Probation Office submitted the PSR to the Court. The PSR concluded that Baez-Garcia's base offense level was 36, finding that the offense involved "at least 23,000 kilograms of marijuana equivalent." (PSR at 27, ¶ 84 (citing USSG § 2D1.1).) The PSR applied a two-level enhancement for possession of a dangerous weapon and a four-level enhancement because the "[e]vidence clearly show[ed] that Baez-Garcia conceptualized, initiated, and

managed a complex, large conspiracy," resulting in a total offense level of 40.  (*Id.* at 27, ¶¶ 82, 85; 28, ¶ 87 (citing USSG § 3B1.1(a)).)  With Baez-Garcia's criminal history category of VI (*id.* at 33, ¶ 107), the corresponding USSG imprisonment range was 360 months to life (*id.* at 38, ¶ 135).

Both parties filed sentencing memoranda prior to sentencing.  (Docs. 611–613.)  Attorney Williams attempted to mitigate Baez-Garcia's role in the conspiracy, arguing that he "fit[] the profile of a street level dealer, not that of a wholesale distributor."  (Doc. 611 at 4.)  Williams advocated for a 15-year sentence of imprisonment—at the bottom of the range stipulated to by the parties in the Plea Agreement.  (*Id.* at 10.)  Several objections to the PSR were submitted for the Court's consideration, including an objection to the application of the two-level enhancement under the Guidelines for possession of a dangerous weapon, and the quantity of drugs attributable to Baez-Garcia.  (Doc. 612 at 1; *see also* PSR at 41.)

In response, the government asserted that "[i]n light of the quantity of drugs [Baez-Garcia] oversaw, the far reach of the organization he assembled and ran, and the utter disregard [he] has had for the law throughout his entire adult life, a sentence of thirty years or more [wa]s warranted," even without a firearms enhancement.  (Doc. 613 at 8.)  Furthermore, the government argued, "Baez-Garcia did not accept responsibility for his crime until the middle of the trial, after he heard damaging testimony" from codefendants and other witnesses.  (*Id.* at 10.)  Nevertheless, pursuant to the parties' stipulation in the Plea Agreement, the government recommended an 18-year term of imprisonment.  (*Id.* at 8.)

Baez-Garcia appeared for sentencing on March 18, 2016. (Doc. 651.) Attorney Williams again argued that Baez-Garcia did not possess a dangerous weapon in the course of the conspiracy. In response, the government elicited testimony from several witnesses in support of the dangerous-weapon enhancement. (*Id.* at 4–7, 16–101.) Williams also argued that Baez-Garcia had been a "model prisoner" for several years while incarcerated. (*Id.* at 101–04.) Baez-Garcia addressed the court directly, expressing some acceptance of responsibility, but also claiming that the prosecution was "coaching" lies from codefendants, and advancing his theory that the case against him was a result of "vindictive prosecution." (*Id.* at 104–11.) Judge Reiss adopted the PSR's offense level calculation of 40, which included a two-level enhancement for possession of a dangerous weapon, a four-level enhancement for Baez-Garcia's role as the leader of the conspiracy, and a two-level reduction for acceptance of responsibility, and a criminal history category of VI. (*Id.* at 117–18.) Although, as the PSR concluded, this offense level and criminal history category correspond to an advisory range of 360 months to life term of imprisonment (*id.* at 118), applying the statutory sentencing factors under 18 U.S.C. 3553(a), Judge Reiss imposed a sentence of 204 months' imprisonment, a sentence within the 180- to 216-month range stipulated to by the parties, to be followed by a five-year term of supervised release. (*Id.* at 119–26.)

## Analysis

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody" may collaterally attack his sentence on "the ground that [it] was imposed in violation of the Constitution or laws of the United States." Section 2255(a) provides relief only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). As the movant, Baez-Garcia bears the burden of establishing any claim under § 2255 by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

## I.   Ineffective Assistance of Counsel

The crux of Baez-Garcia's central claim is that he received ineffective assistance of counsel (IAC) both during plea negotiations, resulting in an ill-advised guilty plea, and at time of sentencing. (*See generally* Docs. 648; 648-1.) More particularly, Baez-Garcia advances three primary IAC theories: (1) that his attorneys provided ineffective assistance by misleading him about his maximum sentence exposure if convicted at trial; (2) that his attorneys failed to challenge the calculation of his sentence based on drug quantity; and (3) that counsel were ineffective by failing to investigate the involvement of a disgraced chemist and her role in analyzing seized drug evidence. (*See generally* Doc. 648-1.) Baez-Garcia seeks vacatur of his conviction and dismissal of the charges, or alternatively, to be

resentenced or to be granted a new trial.  (Doc. 648 at 12.)  All three contentions fail for the reasons set forth below.

The Sixth Amendment guarantees a criminal defendant effective assistance of counsel during all critical stages of the proceedings, including plea bargaining. *See, e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).  "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).

To succeed on an ineffective assistance claim, a petitioner must demonstrate that: (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 687–88, 691–93; *see also Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 562.  Under the first prong, the petitioner's burden is significant because the "court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 689).  The determinative question is not whether counsel "deviated from best practices or most common custom," but rather whether the "representation amounted to incompetence under prevailing professional norms." *Harrington v. Richter*, 562 U.S. 86, 88 (2011).  The second prong requires a petitioner to demonstrate actual prejudice.  *Strickland*, 466 U.S. at 687–88.  In the context of a guilty plea, actual

prejudice means "a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Arteca*, 411 F.3d at 320 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## A.     Plea Agreement and Sentence Exposure

Baez-Garcia's core IAC claim is that his guilty plea was involuntary because his attorneys incorrectly advised him "that if he rejected the plea and continued with trial, he would receive a life term of imprisonment," and this advice was the sole reason that he agreed to forego his right to trial by jury and enter into the Plea Agreement.[1]  (Doc. 648-1 at 1; *see also id.* at 5.)  But Baez-Garcia fails to demonstrate that Attorney Williams's advice regarding the plea deal fell below an objective standard of reasonableness and that, but for this advice, Baez-Garcia would not have pleaded guilty and would have insisted on continuing with the trial. *See Lockhart*, 474 U.S. at 58–59.

A defense counsel's performance may fall below an objective standard of reasonableness if the attorney does not "'advise his client fully on whether a particular plea to a charge appears desirable.'" *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted) (quoting A.B.A., Model Code of Prof'l Resp., Ethical Consideration 7-7 (1992)); see also *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005)

---

[1] Baez-Garcia also alleges that Attorney Williams wrote the first draft of the Plea Agreement and then misled Baez-Garcia "into believing the United States offered to settle[] the case by plea agreement when it was [Attorney Williams] who drafted the plea contract, and presented it."  (Doc. 648-1 at 1.)  But the evidence contradicts this allegation; specifically, Attorney Williams's Affidavit describes preliminary negotiations with the prosecutors that led to the government's proposed plea terms, which the attorney then verbally discussed with Baez-Garcia prior to receiving the final, written agreement from the government.  (Doc. 656 at 2; *see also* Doc. 580.) Moreover, even if Attorney Williams did initiate plea negotiations and mislead Baez-Garcia to this effect, Baez-Garcia neither explains why the alleged misrepresentation was objectively deficient nor demonstrates actual prejudice.  See *Strickland*, 466 U.S. at 687–88, 691–93; *Lockhart*, 474 U.S. at 59.

(stating that defense counsel "has a professional obligation to adequately inform her client about the considerations that are relevant to her client's decision to accept or deny a plea bargain"). For example, in *United States v. Gordon*, the Second Circuit concluded that a defense attorney violated *Strickland*'s first prong when, during pretrial plea negotiations, the attorney grossly underestimated his client's sentencing exposure. 156 F.3d 376, 380 (2d Cir. 1998). That is not the case here.

Instead, the record demonstrates that counsel repeatedly and accurately discussed sentencing exposure with Baez-Garcia. *See Davis*, 428 F.3d at 89. Although the Dominican Republic's extradition agreement with the United States capped the potential prison sentence at 30 years, (*see, e.g.*, Doc. 650 at 8–9), the conspiracy count, to which Baez-Garcia pleaded guilty, did in fact carry a sentence with a maximum term of life imprisonment, under both the statute and the advisory Sentencing Guidelines. (Doc. 580 at 1, ¶ 2; PSR at 1, 38, ¶¶ 134–35.) At the change of plea hearing, Attorney Williams explained the impact of the extradition agreement and the resulting 30 year maximum sentence and attested that he had discussed this issue with Baez-Garcia. (Doc. 650 at 8–9.) Further, when questioned about the extradition agreement's 30-year limitation on the potential life sentence, Attorney Williams stated, "[W]e've brought [it] to his attention. He knows about it." (*Id.* at 9.) Finally, when Judge Reiss engaged in the Rule 11 colloquy, she reiterated to Baez-Garcia that, although the charge carried a maximum term of life in prison, counsel had informed the court that the maximum

term of imprisonment was limited to 30 years because of the extradition agreement. (*Id.* at 21–22.)

In short, the record contradicts Baez-Garcia's current claim that he only agreed to plead guilty because Attorney Williams represented that he would face a life sentence if convicted after trial. Instead, the record of the change of plea proceeding demonstrates that Attorney Williams made Baez-Garcia well aware of the 30-year cap imposed by the extradition agreement. Baez-Garcia asserted his understanding of the implications of his guilty plea during the Rule 11 hearing and affirmed that no one had "made any agreements or promises or representations to [him] that [he was] relying on in pleading guilty" beyond the terms of the Plea Agreement. (*Id.* at 11–12.) The court is "entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the charges against him, had discussed the plea with his attorney, and understood the consequences of his plea." *United States v. Pichardo*, 595 F. App'x 19, 21 (2d Cir. 2014). Given the statements Attorney Williams made in open court, Judge Reiss's thorough Rule 11 colloquy, and Baez-Garcia's sworn statements during that colloquy, Baez-Garcia fails to demonstrate that Attorney Williams's advice fell outside "the wide range of reasonable professional assistance." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689).

Even if Baez-Garcia could establish that Attorney Williams's advice was objectively unreasonable, his IAC claim would fail because he presents no evidence that a reasonable probability existed that, but for counsel's errors, he would have

13

continued with the trial. *Lockhart*, 474 U.S. at 59. To determine whether an adequate showing of prejudice has been made, the Court "inquires into the record as a whole." *Arteca*, 411 F.3d at 321. Specific factors include the voluntariness of the plea, any strategic benefit the defendant secured by pleading guilty, the weight of evidence as to the defendant's guilt, and whether the defendant provides any new evidence to suggest he or she would have acted differently and proceeded to trial. *Padilla v. Keane*, 331 F. Supp. 2d 209, 216-17 (S.D.N.Y. 2004). Although Baez-Garcia asserts that, but for counsel's "false pretense[s]," he would have proceeded with the trial and prevailed, (Doc. 648-1 at 5), the record as a whole does not support this conclusory assertion.

Instead, the record is replete with evidence that suggests no such likelihood that Baez-Garcia would have continued with the trial. First, a court may presume that a defendant voluntarily chose to plea where the defendant, like Baez-Garcia in this case, states in the colloquy that he understands the consequences of the plea and that he chose to plead guilty after consulting with his attorney. *Padilla*, 331 F. Supp. 2d at 217. This is particularly true when the information provided by defense counsel is accurate and provides a basis for the defendant to make an informed decision regarding the plea deal. *See Guerrero v. United States*, No. 08 Civ. 2880(LTS), 2012 WL 423348, at *7 (S.D.N.Y. Feb. 8, 2012) (concluding petitioner did not establish prejudice, in part because "Petitioner was correctly informed of the relevant statutory maximums"). Here, as described above, Attorney Williams reviewed the risks of trial with Baez-Garcia in detail, including informing him of his

14

exposure to "a significant sentence because he would have been considered a career criminal," as well as discussing "the benefits of the proposed resolution (a sentencing range below the mandatory minimum, and well-below the advisory guideline range for a career offender, in the event of a conviction)." (Doc. 656 at 2, ¶ 10.) This accurate information, coupled with Baez-Garcia's allocution, strongly suggests that Baez-Garcia would not have continued with the trial if defense counsel's purported error did not occur. *Padilla*, 331 F. Supp. 2d at 217.

The significant strategic benefits Baez-Garcia secured by pleading guilty support this suggestion. By pleading guilty, Baez-Garcia received a 204-month (17-year) term of imprisonment—or, to put it another way, Baez-Garcia received a sentence 13 years below the minimum suggested by the Guideline imprisonment range. (*See* Doc. 651 at 118, 126.) This sentence was also below the mandatory minimum sentence of 20 years under 21 U.S.C. § 841(b)(1)(A), which the government could have sought based on Baez-Garcia's prior convictions. (*See* PSR at 28, ¶ 90.) Without a plea agreement, not only would the government "presumably have been free to prosecute" Baez-Garcia on the other count against him at trial, but also Baez-Garcia would have been exposed to a career criminal designation and a mandatory minimum sentencing range. *Arteca*, 411 F.3d at 322. At sentencing, the government made clear that it would have sought a sentence of at least 30 years had the case proceeded to trial. (Doc. 613 at 8 ("[A] sentence of thirty years or more [wa]s warranted by this case.").); see also Doc. 651 at 114 ("[W]e are easily in the 360-to-life range; therefore, the government suggests that a

drop to 18 years is . . . more than probably what's warranted, but it is to what the government agreed.").)  Although not dispositive, when a plea agreement lessens the severity of a sentence, "courts are generally less likely to suspect an involuntary or misguided decision to plead." *Padilla*, 331 F. Supp. 2d at 217; *see also Arteca*, 411 F.3d at 321 (noting that defendant "earned a three-level reduction from his base offense level for acceptance of responsibility—a benefit that he would have lost had he gone to trial").

Finally, Baez-Garcia has not provided "any persuasive reason for doubting the strength of the government's case against him," particularly in light of the fact that his codefendants all pleaded guilty when presented with the weight of similar evidence.  *Arteca*, 411 F.3d at 321–22; (*see also* Doc. 651 at 126.)  In fact, a review of the trial transcripts reveals that the government's evidence was overwhelming. Absent a specific reason for questioning the evidence, Baez-Garcia cannot surmount the high burden of demonstrating prejudice.  *Padilla*, 331 F. Supp. 2d at 217 ("[W]hen the evidence of a defendant's guilt is overwhelming, the burden of demonstrating prejudice to satisfy the second *Strickland* prong is virtually insurmountable.").  Similarly, Baez-Garcia does not identify any new evidence or specific investigation that, if conducted, would have influenced his plea decision.  *Id.* Put simply, Baez-Garcia's unsupported and conclusory statement that he would have chosen to proceed to trial is insufficient to establish actual prejudice under *Strickland.  Id.* at 218; *see also Cuevas v. United States*, Nos. 10 Civ. 5959(PAE)(GWG), 98 Cr. 1053(PAE), 2012 WL 3525425, at *9 (S.D.N.Y. Aug. 16,

2012) ("[P]etitioner must provide some basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea."), *report and recommendation adopted*, 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013).

### B.    Sentence Calculation

Baez-Garcia also alleges that the sentencing court erred in calculating his sentence and faults counsel for failing to advocate that the Guidelines range should have been "based on the oxycodone object, rather than cocaine." (Doc. 648-1 at 7.) But Baez-Garcia again fails to show that Attorney Williams's performance was deficient or that he was prejudiced by that performance. *Strickland*, 466 U.S. at 466 U.S. at 687–88, 691–93.

First, defense counsel's failure to advocate for a different drug as the basis for determining the Sentencing Guidelines range of imprisonment was not deficient. Baez-Garcia appears to misapprehend how the Sentencing Guidelines work in the context of offenses involving multiple types of drugs. The mechanics of the advisory Sentencing Guidelines offense level calculation for controlled substances offenses require that all types of drugs are included in the offense level determination. This is accomplished by means of a conversion of each separate drug into a marijuana equivalency. USSG § 2D1.1 cmt. n.8(C). The PSR reveals that the required

17

conversion of all of the drugs into a marijuana equivalency was, in fact, accomplished here.  (PSR at 25–26, ¶ 79.)

In addition, Baez-Garcia "stipulate[d] to, agree[d] with, and admit[ted] that the appropriate base offense level for drug quantity under the [USSG] [wa]s level 34."  (Doc. 580 at 2, ¶ 4.)  In light of the stipulation and the equivalency conversion process, it is irrelevant which drug the Guidelines calculation was based upon.  As the government stated at sentencing, moreover, the stipulated offense level "was central" to the government's agreement to enter into a plea, and if Baez-Garcia had objected to the drug quantity, the government was "prepared to continue with trial."  (Doc. 651 at 12.)  Accordingly, the court did not make evidentiary findings on drug quantities at sentencing, beyond those agreed to in the Plea Agreement, because they would not "affect the sentence."  (*Id.* at 9.)  And as Attorney Williams states in his Affidavit, the drug quantities "were almost beside the point because whatever guideline range the Court decided to apply in this case, the agreed-upon sentencing range was well below the advisory guideline sentencing range, whether it was based on heroin, cocaine, oxycodone, or a combination of all of these drugs."[2]  (Doc. 656 at 3, ¶ 23.)  As discussed above, Baez-Garcia also fails to show any prejudice resulted from Attorney Williams's performance; in particular, Baez-Garcia received a

---

[2]  Though the specific drug quantities were ultimately immaterial because of the bargained offense level stipulation, in his supplemental sentencing memorandum, Attorney Williams challenged the drug quantity calculations in the PSR, arguing that statements by codefendants and cooperators with respect to drug quantities for the purposes of Baez-Garcia's offense conduct were "inconsistent," "inflated the amount of cocaine he acquired and sold," and were ultimately "unreliable."  (Doc. 612 at 1.)  In sum, Williams zealously advocated the defense argument that Baez-Garcia "was selling relatively small amounts" of cocaine.  (*Id.* at 2.)

substantial sentencing benefit by entering into the plea. *See United States v. Graham*, 411 F. Supp. 2d 338, 341 (W.D.N.Y. 2006).

Citing to *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir. 1984) and *Edwards v. United States*, 523 U.S. 511 (1998), Baez-Garcia claims that because he pleaded guilty to conspiring to violate two statutes under Count One, he should have been convicted under the statute imposing the least severe punishment. His reliance on *Orozco-Prada* is misplaced. The *Orozco-Prada* holding applies where a jury has convicted a defendant on a count charging the violation of more than one statute, or on a conspiracy with more than one object, where each violation would entail a different statutory maximum. 732 F.2d at 1083; *see also Edwards*, 523 U.S. at 515. In this scenario where the sentencing judge cannot determine, absent a special verdict form, whether the jury intended to convict the defendant of violating one or both statutes, the judge must sentence the defendant under the statute with the "least severe punishment." *Orozco-Prada*, 732 F.2d at 1083-84. But concerns about an ambiguous jury verdict are not present here. The Western District of New York offered this explanation in an analogous case:

> In essence, [Defendant] claims that because the indictment charges that he conspired to possess and distribute different types of drugs, e.g., cocaine, heroin and marijuana, the Court was limited to imposing a sentence no greater than the maximum sentence for the least serious crime. . . . Unfortunately, for [defendant], he completely misstates what occurred in his case and the authority that he relies on, [*Orozco-Parda*] is inapposite. . . . The plea agreement could not have been clearer . . . [and] specifically recited that [defendant] agreed to plead guilty to conspiracy to possess with intent to distribute 50 grams or more of cocaine base and recited that that charge carried a mandatory minimum sentence of 10 years and a maximum term of life imprisonment.

> This is not a case, therefore, where multiple drugs were charged and it was unclear which drug was involved. *Orozco-Prada* was an entirely different situation. There the jury found the defendant guilty of a conspiracy charge where multiple drugs were alleged. Because there was no special verdict, it was impossible to determine whether the jury had unanimously convicted the defendant of the more serious cocaine charge or the less serious marijuana one. . . . There was no confusion as to what part of the statute [defendant] was pleading to [here]. There were multiple references to the fact the plea was to conspiracy relating to cocaine base.

*Graham*, 411 F. Supp. 2d at 340–41. Though Baez-Garcia pleaded guilty to a conspiracy count involving three types of drugs, his claim fails for the same reasons, because it was clear which drugs and the minimum quantities of those drugs, were involved. *Id.* at 340. The Plea Agreement unequivocally stated that Baez-Garcia was pleading guilty to conspiracy to distribute five kilograms or more of cocaine, 100 grams or more of heroin, and oxycodone. The plea to conspiring to distribute the 5 kilograms or more of cocaine triggered a minimum sentence of 10 years and up to life in prison. 21 U.S.C. § 841(b)(1)(A). Baez-Garcia confirmed his understanding of the consequences of his plea and conceded these quantities numerous times at the change of plea hearing and at sentencing. (*See* Doc. 580 at 1, ¶ 1; Doc. 650 at 4–5, 21, 26; Doc. 651 at 7–8.) Like the defendant in *Graham*, Baez-Garcia was fully informed of the mandatory and maximum sentences implicated by his plea. As discussed above, it was unnecessary and irrelevant for the court to make any more specific drug quantity determinations at sentencing because of the parties' stipulation to the Guidelines sentencing range in the Plea Agreement. Accordingly, Baez-Garcia fails to satisfy either prong of *Strickland* and,

as a result, cannot meet his burden to show that he received ineffective assistance of counsel at sentencing.

### C.    Testimony by Forensic Chemist

Baez-Garcia argues that counsel was ineffective by failing to alert the court about drug-test results allegedly falsified by now disgraced former Massachusetts state chemist Annie Dookhan and "otherwise allow[ing] Peti[]tioner to be convicted and sentenced on falsified evidence." (Doc. 648-1 at 7.) Doohkan was convicted in Massachusetts of perjury, evidence tampering and obstruction of justice for her misconduct as a state chemist. *See Wilkins v. United States*, 754 F.3d 24 (1st Cir. 2014). Baez-Garcia's argument appears premised on his assertion that Dookhan falsified forensic tests of evidence in his case; specifically, cocaine evidence seized in a 2009 traffic stop. (*See* Doc. 656 at 3–4, ¶¶ 24–31.) But the record here reveals that Nancy Brooks, not Dookhan, was the forensic chemist who conducted the drug tests at issue and testified in this case, and thus Baez-Garcia's claim is meritless. (Doc. 601 at 131–48.) "An attorney's '[f]ailure to make a meritless argument does not amount to ineffective assistance.'" *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (alteration in original) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)).

Moreover, Attorney Williams's Affidavit reveals that he conducted a thorough inquiry into the Dookhan investigation to ensure it had no impact on Baez-Garcia's case. (Doc. 656 at 3–4.) Williams spoke with attorneys representing clients involved in the controversy, conferred with the United States Attorney's Office, "and

obtained all relevant documents generated by the Massachusetts State Police and the Massachusetts State Crime [L]ab." (*Id.* at 3, ¶¶ 25–26.)  He confirmed that Nancy Brooks examined the narcotics at a branch of the Massachusetts State Crime Lab that had no involvement with Dookhan's evidence tampering.  (*Id.* ¶ 27.) Williams discussed all of these findings with his client long before Baez-Garcia decided to plead guilty.  (*Id.* at 3–4, ¶¶ 30–31.)  Finally, prior to trial the government moved to preclude evidence and questioning regarding the Massachusetts laboratory investigation because "[t]here [wa]s simply no reason to believe that . . . Dookhan, or any employee at the Massachusetts Department of Public Health Drug Analysis Laboratory was, or could have been, involved in any way" with the drug testing in Baez-Garcia's case.  (Doc. 530 at 16.)  Although no transcript of the hearing has been prepared, it now appears that at a pretrial hearing, counsel stated that the Dookhan issue would not be raised at trial.  Audio recording: Motion Hearing at 11:44, *Reyes-Nieto*, No. 5:10-cr-88-cr-3 (Sept. 2, 2015); (*see also* Doc. 559).

For these reasons, Baez-Garcia has failed to demonstrate that he received ineffective assistance at any stage of the proceedings.  With respect to his attorneys' performance, Baez-Garcia's claims are either meritless or contradicted by the record.  As to prejudice, Baez-Garcia cannot demonstrate that, absent counsels' purported errors.  Accordingly, I recommend that Baez-Garcia's Motion be DENIED.

## II.    No Evidentiary Hearing is Required

A court ruling on a § 2255 motion must hold a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  To merit a § 2255 hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987) (citing *Machibroda v. United States*, 368 U.S. 487, 514 (1962); *Dalli v. United States*, 491 F.2d 758, 761 (2d Cir. 1974)).  An evidentiary hearing is not warranted here because Baez-Garcia's Motion and the record plainly demonstrate that he is not entitled to relief under § 2255, as explained above.

## <u>Conclusion</u>

For the foregoing reasons, I recommend that Baez-Garcia's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 648) be DENIED without a hearing.

A certificate of appealability in a § 2255 proceeding may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The movant has not made this showing unless "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner[,] or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations and citation omitted).  Baez-Garcia does not satisfy this standard. Accordingly, I further recommend that a certificate of appealability be DENIED.

Dated at Burlington, in the District of Vermont, this 25th day of September 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).