U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 MAY -3 PM 1:52

CLERK
BY (signature)
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:10-cr-88 |
| | ) | |
| DAVID BAEZ GARCIA | ) | |

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR A STATUS UPDATE AND
ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
(Docs. 648, 660, & 663)

This matter came before the court for a review of the Magistrate Judge's September 25, 2017 Report and Recommendation ("R & R") (Doc. 660), recommending that the court dismiss the 28 U.S.C. § 2255 petition filed by Defendant David Baez Garcia. Defendant seeks a reduction of his below-Guidelines sentence of 204 months imprisonment based on his claim of ineffective assistance of counsel. (Doc. 648.) The government opposes the motion. On August 29, 2016, Defendant's trial attorneys, David J. Williams, Esq. and Brooks G. McArthur, Esq., filed affidavits addressing the arguments in Defendant's § 2255 petition.

On October 17, 2017, Defendant objected to the R & R's conclusion that he failed to establish that his attorneys' representation was ineffective on the grounds that they: (1) provided ineffective advice during plea negotiations by failing to explain the advantages and disadvantages of pleading guilty and misleading him as to his maximum sentence exposure if he was to be convicted at trial; (2) erroneously failed to object to the calculation of the Sentencing Guidelines range with respect to drug quantity and the object of the conspiracy; and (3) insufficiently investigated the role of Annie Dookhan, a former Massachusetts State Crime Laboratory chemist, in the testing of the narcotics attributed to Defendant. Defendant argues that neither the Magistrate Judge nor the record "provides evidence of counsel[s'] performance," and therefore the court cannot conclude that he failed to establish his claim of ineffective assistance of counsel.

On March 19, 2018, Defendant filed a motion for a status update, which the government did not oppose. (Doc. 663.) In light of the court's resolution of the matter, Defendant's motion for a status update is GRANTED.

Defendant is self-represented. The government is represented by Assistant United States Attorney Nathanael T. Burris.

I.  **Factual and Procedural Background.**

Defendant was charged in a Third Superseding Indictment with conspiring to distribute five kilograms or more of cocaine and 100 grams or more of heroin and oxycodone. On September 9, 2015, Defendant's jury trial began, during which the government presented extensive evidence of Defendant's role in the conspiracy, including testimony by DEA special agents, a United States Customs and Border Protection officer, Massachusetts and Vermont State Police officers, and Nancy Brooks, a forensic chemist at the Massachusetts State Police Crime Laboratory who tested and identified the narcotics recovered during a traffic stop of a vehicle associated with Defendant. In addition, multiple co-conspirators and witnesses testified about Defendant's role in the conspiracy.

On September 16, 2015, in the midst of the government's case, Defendant accepted a plea agreement wherein he agreed to plead guilty to Count One of the Third Superseding Indictment charging him with conspiracy to distribute five kilograms or more of cocaine, and 100 grams or more of heroin and oxycodone in violation of 21 U.S.C. §§ 841, 846. Pursuant to the plea agreement, Defendant attested that he understood his guilty plea would result in a ten year mandatory minimum sentence, with a statutory exposure of up to a life sentence. The agreement included a stipulation that the appropriate base offense level for the drug quantity under the United States Sentencing Guidelines (the "Guidelines") was level 34. It further stated that Defendant "acknowledge[d] that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for . . . modification of his sentence, or for appellate or post-conviction relief." (Doc. 580 at 3, ¶ 8.) Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties further agreed that the

appropriate term of imprisonment was 180 to 216 months. Finally, Defendant attested to his satisfaction with his attorneys' representation.

On September 17, 2015, Defendant appeared in court with his attorneys for a change of plea hearing. At that time, the court reviewed the plea agreement with Defendant and engaged in the full colloquy required by Fed. R. Crim. P. 11. Defendant confirmed that he had read and discussed the entire plea agreement with his attorneys before signing it, and that he was satisfied with his counsels' representation.

Prior to sentencing, the United States Probation Office submitted a pre-sentence report (the "PSR"), which concluded that Defendant's base offense level was 36 based on at least 23,000 kilograms of marijuana equivalent associated with the offense. The PSR included a two level enhancement for possession of a dangerous weapon and a four level enhancement based on Defendant's leadership role in the conspiracy, resulting in a total offense level of 40. Defendant's criminal history was category VI, resulting in a Guidelines range of 360 months to life imprisonment. Defendant's counsel submitted written objections to the PSR, filed a sentencing memorandum, and argued, among other things, that Defendant was responsible for a lesser quantity of drugs than set forth in the PSR.

On March 18, 2016, the court held a sentencing hearing at which the government presented the testimony of two witnesses, one of which testified on behalf of Defendant. The court adopted the PSR as its findings of fact and sentenced Defendant to a below-Guidelines term of imprisonment of 204 months, followed by a term of supervised release of five years. Defendant did not file a direct appeal.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *accord*

*Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

"A defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel bears a heavy burden." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). To successfully allege ineffective assistance of counsel, Defendant must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show both (1) that counsel's performance was so deficient that "the identified acts or omissions were outside the wide range of professionally competent assistance[,]" and (2) that the deficient performance so prejudiced his defense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 690, 694. "The [ineffective assistance of counsel] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

Constitutionally effective counsel embraces a "wide range of professionally competent assistance[,]" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (requiring the trial court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting *Strickland*, 466 U.S. at 689). The performance inquiry examines the reasonableness of trial counsel's actions under "all the circumstances," *id.*, from the perspective of trial counsel "at the time[.]" *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (internal quotation marks omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]" *Id.* at 408 (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks and alteration omitted).

4

## B. Whether Defendant's Attorneys Provided Ineffective Assistance During Plea Negotiations.

Defendant argues that the Magistrate Judge erred in concluding that his attorneys provided effective assistance of counsel with respect to their conduct during plea negotiations and their guidance as to his maximum sentence exposure. He contends that his guilty plea was involuntary because his attorneys erroneously informed him that he could face up to life imprisonment if he did not accept the plea offer.

Defendants' attorneys successfully negotiated for a sentence substantially below the Guidelines range. In response to Defendant's § 2255 petition, Attorney Williams and Attorney McArthur filed affidavits stating that they discussed the "risks of trial . . . and the benefits of the proposed resolution" with him; that they "made sure he understood that whether he accepted or rejected the terms of the proposed settlement was his decision and his alone[;]" and that they reviewed the written plea agreement with him. (Doc. 656 at 2.) At the change of plea hearing, defense counsel highlighted the extradition agreement's limitation on Defendant's maximum term of imprisonment.[1] The court specifically informed Defendant that, pursuant to Attorney Williams's representation, his maximum term of imprisonment was capped at thirty years and clarified that no party had made any promises to Defendant regarding his plea or sentence that were not reflected in the plea agreement. Defendant stated that he fully understood the plea agreement's terms and conditions.

At the change of plea hearing, while under oath, Defendant advised the court that he was satisfied with his attorneys' representation, that the government could establish the essential elements of the charge beyond a reasonable doubt; that the facts recited by the government in support of the charge and contained in his plea agreement were accurate; and that he was pleading guilty because he was in fact guilty of the charge

---

[1] *See* Doc. 650 at 8-9 (transcript of change of plea hearing) ("**MR. WILLIAMS**: Your Honor, it might be a good time to let the Court know about the maximum term of imprisonment for this particular case. Although it's life under the statute, under the terms of the extradition agreement it's 30 years. . . . And the reason I bring it up is that in our discussions with our client, we've brought that to his attention. He knows about it, and I just want the Court--to let you know that we know about that.").

5

against him. Defendant further advised the court that his guilty plea was voluntary, that he voluntarily signed the plea agreement, and that he had not been pressured, threatened, or coerced into entering into the plea agreement or entering a guilty plea. The record thus supports the Magistrate Judge's conclusion that counsels' performance did not fall below an objective standard of reasonableness. *See United States v. Boamah*, 2017 WL 2799164, at *7 (S.D.N.Y. June 26, 2017) ("[T]he [c]ourt is 'entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving [certain rights],' and was satisfied with his counsel.").

Even assuming Defendants' attorneys' representation failed to satisfy prevailing professional norms, Defendant has also failed to establish *Strickland*'s prejudice prong. There is no evidence that he would have rejected the government's plea agreement but for his attorneys' advice. *See Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) ("A defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.") (citing *United States v. Hernandez*, 242 F.3d 110, 112-13 (2d Cir. 2001)). Defendant's attorneys reviewed the risks of continuing with the trial with Defendant prior to his change of plea hearing, and they secured a well below Guidelines and well below extradition cap sentence for him. *See Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) ("[W]here the defendant secured a significant strategic benefit by pleading guilty, courts are generally less likely to suspect an involuntary or misguided decision to plead."); *see also* Doc. 651 at 114 (transcript of sentencing hearing) ("[W]e are easily in the 360-to-life range; therefore, the government suggests that a drop to 18 years is[] . . . more than probably what's warranted, but it is to what the government agreed, but no more a drop than that is appropriate."). The government's evidence at trial was overwhelming. Defendant does not demonstrate that he would have proceeded with trial but for his attorneys' alleged ineffectiveness. Instead, in the midst of trial he secured a plea agreement that resulted in a sentence substantially less than his full exposure. *See*

6

*United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005) (concluding defendant failed to show prejudice under *Strickland* in the context of his guilty plea where defendant's "co-defendants . . . also pled guilty, and [defendant had] not provided any persuasive reason for doubting the strength of the government's case against him"). Based on "all the circumstances," Defendant has not established either prong of the *Strickland* test with regard to his attorneys' conduct during plea negotiations. *Strickland*, 466 U.S. at 690.

### C. Whether Defense Counsel Provided Ineffective Assistance by Failing to Object to the Sentencing Guidelines Calculation.

Defendant's second objection to the Magistrate Judge's R & R is that his counsel was ineffective because they failed to object to the Sentencing Guidelines calculation. Specifically, Defendant contends that his Guidelines range should have been calculated with respect to the quantity of oxycodone attributable to the conspiracy as opposed to cocaine.

Pursuant to the terms of his plea agreement, Defendant stipulated that the base offense level for drug quantity in his case was level 34. *See* Doc. 580 at 2, ¶ 4 ("DAVID BAEZ GARCIA stipulates to, agrees with, and admits that the appropriate base offense level for drug quantity under the United States Sentencing Guidelines is level 34."). In addition, as Defendant's attorneys averred, "the agreed-upon sentencing range [in the plea agreement] was well below the advisory [G]uideline sentencing range, whether it was based on heroin, cocaine, oxycodone, or a combination of all of these drugs." (Doc. 656 at 3, ¶ 23.)

At the change of plea hearing, the court reviewed with Defendant the provisions of his plea agreement that pertained to his minimum and maximum Guidelines range, as well as the range of imprisonment encompassed by the parties' agreement. Defendant stated affirmatively that he understood and agreed to those terms. Accordingly, the Magistrate Judge correctly determined that Defendant has not established that his attorneys provided ineffective assistance of counsel with respect to the advisory Guidelines calculation.

### D. Whether Counsel Ineffectively Investigated Ms. Dookhan's Role in Defendant's Case.

Defendant's final argument is that his attorneys rendered ineffective assistance because they failed to adequately investigate Ms. Dookhan's role in this case. He asserts that "the lab reports show that [Ms.] Dook[h]an tested the drug evidence, and oversaw the testing for the time she was employed at the crime lab." (Doc. 662 at 3-4.) The government responds that another chemist tested the drug evidence, and that defense counsel nonetheless conducted a thorough investigation of Ms. Dookhan despite the fact that she was not involved in Defendant's case.

Although defense counsel has a duty to investigate, that duty does not "compel defense counsel to investigate comprehensively every lead or possible defense, . . . or to scour the globe on the off-chance something will turn up[.]" *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citations omitted). In order to assert a claim for the failure to investigate, a "petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation[.]" *Taylor v. Poole*, 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009) (collecting cases).

Moreover, "[a] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Halo v. United States*, 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007); *see also Petrucelli v. United States*, 2009 WL 4858081, at *10 (S.D.N.Y. Dec. 15, 2009) ("Where allegations of ineffective assistance are conclusory and give no indication as to what exculpatory evidence may have been revealed by an investigation, a Sixth Amendment ineffective assistance claim based on failure to investigate is doomed.").

Defendant's attorneys described their investigation into Ms. Dookhan as follows:

Before trial, we conducted an extensive investigation into the Massachusetts State Crime Lab.

[We] spoke with attorneys in Vermont and New Hampshire who had represented clients caught up in the controversy.

8

> [We] conferred with the [Assistant United States Attorney assigned to Defendant's case] about this issue and obtained all relevant documents generated by the Massachusetts State Police and the Massachusetts State Crime Lab.
>
> The investigation determined that the cocaine found by the Massachusetts State Police in [a car associated with Defendant] stopped on I-91 in 2009 was sent to a branch of the Massachusetts [State] Crime Lab that was not touched by the Annie Dookhan scandal.
>
> Because there was no connection to the on-going Massachusetts State Crime [L]ab controversy, the prosecutors filed a motion in limine to preclude any mention of the Annie Dookhan scandal by the defense before the trial started.
>
> According to all the evidence [we] reviewed, the cocaine found in the [car associated with Defendant] was examined by a forensic chemist named Nancy Brooks and that the government was prepared to call Ms. Brooks as a trial witness.

(Doc. 656 at 3, ¶¶ 24-29) (citation omitted).

Counsels' affidavits establish that they conducted an adequate investigation into whether Ms. Dookhan was involved in Defendant's case and determined that she was not. Despite his contention to the contrary, Defendant has failed to provide any evidence or even a description of evidence that would support further investigation. *See Greiner*, 417 F.3d at 322 ("In nearly every case that concludes that counsel conducted a constitutionally deficient investigation, the courts point to readily available evidence neglected by counsel"). His claim on this basis must therefore also fail.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a status update is GRANTED. (Doc. 663.) The court hereby ADOPTS the Magistrate Judge's R & R (Doc. 660), DENIES Defendant's motion to vacate, set aside, or correct his sentence, and DISMISSES his § 2255 motion (Doc. 648).

9

Pursuant to Fed. R. App. P. 22(b)(1) and 28 U.S.C. § 2253(c)(2), the court DENIES Defendant a certificate of appealability in this matter because Defendant has failed to make a substantial showing of the denial of a constitutional right.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 3rd day of May, 2018.

Christina Reiss, District Judge
United States District Court