UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                      Crim. Action No. 5:10–cr–88–cr–3

David Baez-Garcia

## **OPINION AND ORDER**
(Doc. 678)

Petitioner David Baez-Garcia, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Docs. 648, 668.) After five days of a jury trial, Baez-Garcia pleaded guilty pursuant to a written plea agreement to engaging in a conspiracy to distribute five kilograms or more of cocaine, 100 grams or more of heroin, and oxycodone, in violation of 21 U.S.C. §§ 846 and 841. (Doc. 580 at 1, ¶ 1; *see also* Doc. 116 at 1–2.) In March 2016, United States District Judge Christina Reiss sentenced Baez-Garcia to a 204-month term of imprisonment, to be followed by a five-year term of supervised release. (Doc. 620 at 2–3; *see also* Doc. 651 at 126.) Baez-Garcia did not pursue a direct appeal and the reason for that failure is now at issue.

In his original § 2255 Motion, Baez-Garcia claimed that Attorneys David Williams and Brooks McArthur provided ineffective assistance of counsel by advising him to plead guilty and by failing to challenge the drug quantity calculation employed to determine the advisory Sentencing Guideline range of imprisonment. (*See generally* Docs. 648; 648-1.) Baez-Garcia also complained of his

attorneys' failure to challenge the indictment because of misconduct by a Massachusetts state chemist who did not participate in the investigation. (*Id*.) The government opposed the Motion. (Doc. 658.) After receiving affidavits of Attorneys Williams and McArthur and reviewing the record, a Report and Recommendation was filed on September 25, 2017, concluding that Baez-Garcia's § 2255 Motion should be denied. (Doc. 660.) In an Opinion and Order filed May 3, 2018, United States District Judge Christina Reiss adopted the Magistrate Judge's Report and Recommendation and Baez-Garcia's § 2255 Motion was denied. (Doc. 664.) The district court also denied a certificate of appealability, concluding that Baez-Garcia had failed to make a substantial showing of the denial of a constitutional right. (*Id*.) On May 18, 2018, Baez-Garcia filed a Notice of Appeal, appealing from the denial of his § 2255 Motion. (Doc. 665.) On November 16, 2018, the Second Circuit Court of Appeals summarily dismissed Baez-Garcia's appeal, also concluding that he had failed to make a substantial showing of the denial of a constitutional right. (Doc. 667.) A mandate from the Court of Appeals was filed on December 21, 2018. (*Id*.)

In two subsequent filings, Baez-Garcia has raised a new ineffectiveness-of-counsel claim. (Doc. 668, 671.) On January 22, 2019, Baez-Garcia signed and filed a motion, which he has styled as a "Motion for Leave to File an Amend Under Garza v. Idaho Under 15(c)(1)(B) to Relate Back to Original Pleading in 28 U.S.C. 2255(f)(1)." (Doc. 668.) Subsequently, on June 4, 2019, Baez-Garcia signed and filed a Motion for Restoration of Appellate Rights. (Doc. 671.) In each filing, Baez-

Garcia contends that Williams and McArthur failed to file an appeal on his behalf following his sentencing.[1] By advancing this contention, it is implicitly assumed that Baez-Garcia is also asserting that he instructed counsel to do so.

Presently before the Court is the government's Motion seeking an order compelling defense counsel to respond to Baez-Garcia's most recent claim involving counsel's failure to appeal from the judgment and conviction. (Doc. 678.) In the same filing, the government also seeks an enlargement of time to respond to the Motion. For the reasons set forth below, the government's Motions are GRANTED.

## Background

Given the winding path this case has taken postconviction, it is helpful to review the background of this case. The following facts are derived from the records of this court, including the trial transcripts from the five days of jury trial (Docs. 597–601), the transcripts of the sentencing and change of plea proceedings (Docs. 650, 651), the Plea Agreement (Doc. 580), the presentence report (PSR), and the affidavits of counsel for Baez-Garcia filed in connection with Baez-Garcia's original § 2255 Motion (Docs. 656, 657).

---

[1] The government moved to transfer Baez-Garcia's "Motion for Leave to File an Amend Under Garza v. Idaho" to the Second Circuit Court of Appeals, asserting the Motion was a second or successive petition requiring the Court of Appeals' authorization pursuant to 28 U.S.C. § 2255(h). (Doc. 672.) The district court granted the motion and transferred Baez-Garcia's motion to the Court of Appeals for consideration under § 2255(h). (Doc. 673.) The Court of Appeals denied Baez-Garcia leave to file a second or successive § 2255 motion, finding that such leave was unnecessary. (Doc. 676.) The Court of Appeals noted that Baez-Garcia's motion was filed before the expiration of his opportunity to seek review from the Supreme Court and therefore his proposed filing was not a successive motion. (*Id.*) As a result, the Court of Appeals returned the case for further consideration by this court.

I.      **Investigation and Pretrial Proceedings**

In 2009, the Drug Enforcement Administration (DEA) and the Southern Vermont Drug Task Force investigated a large-scale heroin and cocaine distribution ring operating throughout Vermont. (PSR at 6, ¶ 12.) Investigators ultimately determined that Baez-Garcia was an organizer or leader of the conspiracy, which spanned almost two years, with the participation and assistance of numerous other parties. (*Id.*) "The conspiracy involved cocaine, heroin, and oxycodone . . . and Baez-Garcia operated the conspiracy from various apartments in Rutland, Quechee, and Killington." (*Id.* at 7, ¶ 14.) Law enforcement conducted 15 controlled purchases of narcotics from members of the conspiracy during the investigation. (*Id.* at 11-12, ¶ 28.)

On July 12, 2011, the federal grand jury returned a 12-count Third Superseding Indictment, charging Baez-Garcia and six codefendants with various offenses related to the conspiracy. (Doc. 116.) Count One charged Baez-Garcia and his codefendants with knowingly and willfully conspiring to distribute five or more kilograms of cocaine, 100 grams or more of heroin, and oxycodone, in violation of 21 U.S.C. §§ 846, 841(a), (b)(1)(A), and (b)(1)(B). (*Id.* at 1–2.) Count Two charged Baez-Garcia with knowingly and intentionally distributing heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (*Id.* at 3.)

Baez-Garcia left Vermont in December 2009 for his native country of the Dominican Republic. (Doc. 651 at 131; Doc. 611 at 9.) He was ultimately arrested in the Dominican Republican where he was subject to extradition proceedings.

4

(Doc. 651 at 131.) It is beyond dispute that Baez-Garcia agreed to extradition to the United States and that the extradition agreement between the United States and the Dominican Republic capped Baez-Garcia's sentencing exposure at 30 years' imprisonment in the event of a conviction. (Doc. 650 at 8-9.) In November 2014, the court appointed Attorney David Williams, an experienced member of the court's Criminal Justice Act Panel, to represent Baez-Garcia. The court later appointed Attorney Brooks McArthur, also a member of the CJA Panel, as co-counsel for Baez-Garcia.

## II. Jury Trial and Plea Agreement

A jury trial commenced on September 9 and continued through September 16, 2015. (*See* Docs. 597–601.) Only Baez-Garcia proceeded to trial, as his codefendants pleaded guilty. (*See* Doc. 651 at 126); *see also United States v. Reyes-Nieto et al.*, No. 5:10-cr-88-cr, ECF Nos. 133, 141, 145, 177, 181, 190 (D. Vt. 2010). The government presented extensive evidence against Baez-Garcia, including trial testimony by DEA special agents, a U.S. Customs and Border Protection officer, Massachusetts and Vermont State Police officers, and Nancy Brooks, a forensic chemist with the Massachusetts State Police Crime Laboratory, who tested and identified narcotics involved in the conspiracy. (PSR at 14–25, 27, ¶ 84; *see also* Docs. 597–601.) The evidence against Baez-Garcia also included "trial testimony by multiple co-conspirators and witnesses." (PSR at 27, ¶ 84.) The evidence against Baez-Garcia included the testimony of coconspirator Rauddys Baria-Tejeda, who testified that he typically supplied Baez-Garcia with 300 to 500 grams of cocaine,

5

100 grams of heroin, and 400 oxycodone pills on a weekly basis. (*Id*. at 24, ¶ 78(b); *see also* Doc. 600 at 187–88.) Baez-Garcia's former girlfriend Jessica Lever, who shared a condominium with him for a period during the conspiracy, testified that after Baez-Garcia's meetings with narcotics suppliers, described as "the Mexicans" she had observed between three and five kilograms of heroin in their shared home. (Doc. 598 at 147–48.) Other evidence against Baez-Garcia included the testimony of Thomas Morrissey who described being paid in cocaine for supplying personal services to Baez-Garcia. Morrissey also authenticated recorded phone calls in which Baez-Garcia discussed the activities of the conspiracy. (*See* Doc. 599 at 104–09, PSR at 24, ¶¶ 76–77, 27, ¶ 84.)

After the fifth day of trial, Baez-Garcia entered into a Plea Agreement with the government (Doc. 580). In the written Agreement, Baez-Garcia agreed to plead guilty to Count One of the Third Superseding Indictment, charging him with conspiracy to distribute 5 kilograms or more of cocaine, 100 grams or more of heroin, and oxycodone, in violation of 21 U.S.C. §§ 846 and 841. (Doc. 580 at 1, ¶ 1.) In the Agreement, Baez-Garcia attested to his understanding that his guilty plea would result in a ten-year mandatory minimum term of imprisonment, with statutory exposure of up to a life sentence, as well as a mandatory minimum five-year term of supervised release and up to a lifetime term of supervised release, under 21 U.S.C. § 841(b). (*Id*. ¶ 2.) Baez-Garcia stipulated that "the appropriate base offense level for [the] drug quantity under the United States Sentencing Guidelines [(USSG)] [wa]s level 34." (*Id*. at 2, ¶ 4.) The parties further agreed that

6

under Fed. R. Crim. P. 11(c)(1)(C), "the appropriate term of imprisonment the Court should impose [wa]s no less than fifteen years (180 months) and no more than eighteen years (216 months)." (*Id.* at 6, ¶ 16; *see also* Fed. R. Crim. P. 11(c)(1)(C) ("If the defendant pleads guilty . . . to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case.").) Baez-Garcia also attested to his satisfaction with his attorneys' representation. (Doc. 580 at 6–7, ¶ 19.) As part of the plea agreement, Baez-Garcia agreed to waive his right to appeal his conviction and sentence if the term of imprisonment did not exceed a sentence of 216 months. (Doc. 580 at 4, ¶ 11.)

The parties appeared in the district court for a change of plea hearing on September 17, 2015. (Doc. 650.) Judge Reiss reviewed the Plea Agreement with Baez-Garcia in detail and engaged in the full colloquy required by Fed. R. Crim. P. 11. (*Id.* at 5–26.) Baez-Garcia confirmed that he had "read and discuss[ed] each and every paragraph of the plea agreement with [his] attorney before signing it," and again affirmed his satisfaction with the representation provided by his attorneys. (*Id.* at 10, 11.) Relevant here, Judge Reiss carefully reviewed the paragraph of the plea agreement whereby Baez-Garcia agreed to waive his right to appeal from the sentence in the event the sentence was not greater than 216 months. Upon the court's inquiry, Baez-Garcia stated under oath that he understood that paragraph "completely." (Doc. 650 at 17.) The court accepted Baez-Garcia's pleas of guilty, finding that the pleas of guilty were knowing and

7

voluntary pleas, supported by an independent basis in fact, and were entered by the Defendant freely and voluntarily. (*Id.* at 26.)

### III. Sentencing

Prior to sentencing, the United States Probation Office submitted the PSR to the Court. The PSR concluded that Baez-Garcia's base offense level was 36, finding that the offense involved "at least 23,000 kilograms of marijuana equivalent." (PSR at 27, ¶ 84 (citing USSG § 2D1.1).) The PSR applied a two-level enhancement for possession of a dangerous weapon and a four-level enhancement because the "[e]vidence clearly show[ed] that Baez-Garcia conceptualized, initiated, and managed a complex, large conspiracy," resulting in a total offense level of 40. (*Id.* at 27, ¶¶ 82, 85; 28, ¶ 87 (citing USSG § 3B1.1(a)).) With Baez-Garcia's criminal history category of VI (*id.* at 33, ¶ 107), the corresponding USSG imprisonment range was 360 months to life (*id.* at 38, ¶ 135).

Both parties filed sentencing memoranda prior to sentencing. (Docs. 611–613.) Attorney Williams attempted to mitigate Baez-Garcia's role in the conspiracy, arguing that he "fit[] the profile of a street level dealer, not that of a wholesale distributor." (Doc. 611 at 4.) Williams advocated for a 15-year sentence of imprisonment—at the bottom of the range stipulated to by the parties in the Plea Agreement. (*Id.* at 10.) Several objections to the PSR were submitted for the Court's consideration, including an objection to the application of the two-level enhancement under the Guidelines for possession of a dangerous weapon, and the quantity of drugs attributable to Baez-Garcia. (Doc. 612 at 1; *see also* PSR at 41.)

8

In response, the government asserted that "[i]n light of the quantity of drugs [Baez-Garcia] oversaw, the far reach of the organization he assembled and ran, and the utter disregard [he] has had for the law throughout his entire adult life, a sentence of thirty years or more [wa]s warranted," even without a firearms enhancement. (Doc. 613 at 8.) Furthermore, the government argued, "Baez-Garcia did not accept responsibility for his crime until the middle of the trial, after he heard damaging testimony" from codefendants and other witnesses. (*Id.* at 10.) Nevertheless, pursuant to the parties' stipulation in the Plea Agreement, the government recommended an 18-year term of imprisonment. (*Id.* at 8.)

Baez-Garcia appeared for sentencing on March 18, 2016. (Doc. 651.) Attorney Williams again argued that Baez-Garcia did not possess a dangerous weapon in the course of the conspiracy. In response, the government elicited testimony from several witnesses in support of the dangerous-weapon enhancement. (*Id.* at 4–7, 16–101.) Williams also argued that Baez-Garcia had been a "model prisoner" for several years while incarcerated. (*Id.* at 101–04.) Baez-Garcia addressed the court directly, expressing some acceptance of responsibility, but also claiming that the prosecution was "coaching" lies from codefendants, and advancing his theory that the case against him was a result of "vindictive prosecution." (*Id.* at 104–11.) Judge Reiss adopted the PSR's offense level calculation of 40, which included a two-level enhancement for possession of a dangerous weapon, a four-level enhancement for Baez-Garcia's role as the leader of the conspiracy, and a two-level reduction for acceptance of responsibility, and a

9

criminal history category of VI. (*Id.* at 117–18.) Although, as the PSR concluded, this offense level and criminal history category correspond to an advisory range of 360 months to life term of imprisonment (*id.* at 118), applying the statutory sentencing factors under 18 U.S.C. 3553(a), Judge Reiss imposed a sentence of 204 months' imprisonment, a sentence within the 180- to 216-month range stipulated to by the parties, to be followed by a five-year term of supervised release. (*Id.* at 119–26.)

No direct appeal was filed on behalf of Baez-Garcia. Baez-Garcia now contends that that counsel was ineffective for not filing an appeal. Baez-Garcia suggests that despite his written waiver of his right to appeal he had at least three viable issues that warranted an appeal. First, according to Baez-Garcia, counsel was ineffective for not appealing based on "Amendment 794"[2]; second, for not pursing an appeal based on *Carpenter v. United States*, 138 S. Ct. 2206 (2018) and *Riley v. California*, 573 U.S. 373 (2014); and third, for not pursuing an appeal based on *Gamble v. United States*, 138 S. Ct. 2707 (2018). (Doc. 668.) In a subsequent filing, Baez-Garcia contends that counsel informed him that he could not appeal because he had signed a written plea agreement that included a waiver of his right to appeal. (Doc. 671.)

---

[2] In 2015, the United States Sentencing Commission enacted Amendment 794, which altered § 3B1.2's commentary. *See* USSG supp. to App. C, amend. 794, at 116–18 (2015) [hereinafter Amendment 794]. The amendment added language to the commentary notes that, among other things, explained that the mitigating-role reduction should apply to defendants who are "substantially less culpable than the average participant in the criminal activity" and listed five "non-exhaustive . . . factors" that courts "should consider" when determining whether a defendant qualifies for the reduction. *Id.* at 116.

## Analysis

Presently before the Court is the Motion of the United States seeking supplemental affidavits from defense counsel responding to Baez-Garcia's newest claim. Relying on *Garza v. Idaho*, 139 S. Ct. 738 (2019), Baez-Garcia apparently now contends that he instructed counsel to file a notice of appeal and that counsel failed to follow his instruction. The government also moves for an enlargement of time in which to file a response to the § 2255 Motion. (Doc. 678.)

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming ineffective assistance of counsel must demonstrate that the representation (1) "fell below an objective standard of reasonableness," *id.* at 688, and (2) prejudiced the defendant, *id.* at 694.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court applied the *Strickland* test to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *Id.* at 476–77. The *Flores-Ortega* Court held that a lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable, *id.* at 477, and that prejudice is presumed when counsel's deficient performance leads to the forfeiture of "an appeal that [the defendant] otherwise would have taken," *id.* at 484. "[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing

11

that his appeal would likely have had merit." *Id.* at 477 (alterations in original) (quoting *Peguero v. United States*, 526 U.S. 23, 28 (1999)).

"[A] lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable." *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006). The presumption of prejudice applies even if the defendant has signed a plea agreement waiving the right to appeal. *Id.* at 771–72. But "[a]t the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477.

For these reasons, supplemental affidavits from defense counsel addressing Baez-Garcia's claim are critical. The Second Circuit has stated that "[w]hen a defendant claims that his attorney failed to file a requested notice of appeal, the following proceedings will ensue: (1) a hearing before the district court pursuant to § 2255 to determine whether the client requested the appeal; (2) an appeal from the district court's ruling, should either party seek one; and (3) a direct appeal if the defendant did in fact request that a notice of appeal be filed." *Campusano*, 442 F.3d at 776. The Second Circuit described the required fact-finding as "relatively simple" and noted that "the district court has discretion to determine if a testimonial hearing will be conducted." *Id.* (citing *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001)). For instance, the Second Circuit held in *Chang* that, where the defendant and his counsel submitted conflicting affidavits on the question of whether defense counsel had denied the defendant the opportunity to testify in his

12

own defense, the district court "reasonably decided that the testimony of [the defendant] and his trial counsel would add little or nothing to the written submissions," 250 F.3d at 86, especially given that the defendant relied "solely on his own highly self-serving and improbable assertions" while counsel offered a "detailed description of events [that] was eminently credible." *Id*. Following *Campusano*, district courts have routinely resolved ineffective-assistance-of-counsel claims premised on the alleged failure to file a notice of appeal without requiring a full testimonial hearing. *See, e.g.*, *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 253 (E.D.N.Y. 2009), *aff'd*, 422 F. App'x 25 (2d Cir. 2011); *Garcia v. United States*, No. 06 Civ. 7821LBS, 02 CR. 1033LBS., 2007 WL 1295726, at *2 (S.D.N.Y. Apr. 26, 2007), *aff'd*, 321 F. App'x 90 (2d Cir. 2009).

By raising an ineffective-assistance claim, Baez-Garcia has implicitly waived the attorney-client privilege. *See In re von Bulow*, 828 F.2d 94, 101–02 (2d Cir. 1987); *see also* Vermont Rules of Professional Conduct 1.6(c)(3) ("A lawyer may reveal information relating to the representation of a client . . . when . . . required . . . by court order or when the lawyer reasonably believes that disclosure is necessary . . . to respond to allegations in any proceeding concerning the lawyer's representation of the client."). "It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *In re Lott*, 424 F.3d 446, 457–58 (6th Cir. 2005) (Boggs, C.J., dissenting) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003)); *see*

*Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974) ("[A] client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed."). This waiver, however, is not limitless; it is circumscribed to encompass only those communications "necessary to prove or disprove [the petitioner's] claim." *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009); *Overbaugh v. United States*, 483 F. Supp. 2d 223, 225 (N.D.N.Y. 2007) ("When a habeas petitioner asserts that his trial counsel was ineffective and bases that assertion on claims involving privileged communications, the privilege is waived regarding those conversations."). The waiver also encompasses documents and correspondence relevant to the asserted ineffectiveness.

Based on the foregoing, the Court concludes that it would benefit from review of affidavits from counsel and therefore ORDERS Attorneys Williams and McArthur to prepare and file affidavits on or before March 9, 2020. The affidavits shall respond to Baez-Garcia's claim that counsel failed to file a notice of appeal, presumably despite Baez-Garcia's instruction to do so. The affidavits shall describe any discussions between counsel and Baez-Garcia about his right to appeal and Baez-Garcia's understanding about the waiver of his right to appeal, which is set forth in paragraph 11 of the plea agreement. (Doc. 580.) The affidavits shall include the certification required by 28 U.S.C. § 1746(2) and shall include as exhibits that portion of any relevant written correspondence between Baez-Garcia and counsel concerning the claims raised in Baez-Garcia's recent Motions.

The Court also ORDERS that the United States Attorney shall serve on Attorneys Williams and McArthur a copy of this Order as well as Baez-Garcia's two recent Motions. (Docs. 668, 671.) The United States Probation Office may disclose to counsel a copy of Defendant's Presentence Report, if requested. The United States shall also serve upon Baez-Garcia a copy of the two affidavits to be filed by counsel.

It is further ORDERED that the United States' Motion for Enlargement of Time is GRANTED and the United States shall file a response to Baez-Garcia's Motions within 30 days after the anticipated filing of the affidavits of counsel.

Dated at Burlington, in the District of Vermont, this 6th day of February 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge